UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| COSMO N. CREMALDI and CATHERINE L. CREMALDI, Plaintiffs | ) | |
| v. | ) | Civ. No. 13-11767-MLW |
| WELLS FARGO HOME MORTGAGE, Defendant. | ) | |

MEMORANDUM AND ORDER

WOLF, D.J. March 31, 2015

Plaintiffs Cosmo and Catherine Cremaldi have brought this suit against defendant Wells Fargo Home Mortgage ("Wells Fargo"),[1] which holds a mortgage on property owned by the plaintiffs. The plaintiffs allege that Wells Fargo induced them to stop making mortgage payments by promising to consider them for a mortgage modification. After requiring the plaintiffs to wait for months while late fees and penalties accrued, Wells Fargo placed their mortgage in foreclosure without ever considering them for a modification. The plaintiffs allege that they were required to pay Wells Fargo thousands of dollars in

[1] The defendant notes that "Wells Fargo Home Mortgage, Inc." merged into "Wells Fargo Bank, N.A." in 2004, and that no entity named "Wells Fargo Home Mortgage" currently exists. See Mem. of Law in Support of Mot. to Dismiss at 1, n.1. Wells Fargo has not sought dismissal on misnomer grounds or requested that the plaintiffs amend the pleading. In any event, this action may be continued against the original party. See Fed. R. Civ. P. 25(c). However, if plaintiffs wish to amend the name of the defendant in their Complaint, they may seek leave to do so pursuant to Federal Rule of Civil Procedure 15(a)(2).

fees to reinstate their mortgage and avoid foreclosure. They claim to have suffered irreparable damage to their credit rating and emotional distress as a result of Wells Fargo's alleged deceptive conduct. They assert state law claims for violation of Massachusetts General Laws Chapter 93A ("Chapter 93A"), common law misrepresentation, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Wells Fargo has filed a motion to dismiss all of the plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the plaintiffs have failed to state a claim on which relief can be granted and that their claims are preempted by the federal banking laws. For the reasons explained below, that motion is being denied.

The plaintiff seeks attorneys' fees for part of the time spent responding to the defendant's motion to dismiss. As explained below, that request is also being denied.

## I. BACKGROUND

This case was originally brought in the Middlesex County Superior Court of the Commonwealth of Massachusetts. The Complaint alleges the following.

In January 2008, plaintiffs borrowed $640,000 from Wachovia Mortgage ("Wachovia"), a federal savings bank. Complaint, ¶4.

This loan was secured by a mortgage on real estate owned by the plaintiffs in Cambridge, Massachusetts. Id., ¶5.

In late 2008, Wachovia merged with or was acquired by Wells Fargo, which is a national bank. Id., ¶7.[2] Sometime after the two banks merged, the plaintiffs inquired about restructuring the mortgage loan then held by Wells Fargo. Id., ¶8. At the time of this inquiry, they were current in their loan payments. Id., ¶9.

A Wells Fargo representative advised the plaintiffs that, in order to qualify for a federal mortgage refinancing program, they should stop making mortgage payments to Wells Fargo. Id., ¶¶10-11. In reliance on this advice, the plaintiffs ceased making mortgage payments and filed documents requested by the defendant's representative. Id., ¶12. The plaintiffs were repeatedly instructed to refile the same documents and they did. Id., ¶¶13-14.

A Wells Fargo representative told the plaintiffs that Wells Fargo would render a decision regarding the requested modification within six months. Id., ¶15. Wells Fargo did not render a decision in that time frame. Id., ¶16. On August 2, 2012, the plaintiffs' attorney telephoned the defendant and was informed that the loan had been placed in foreclosure due to

---

[2] As will be explained below, the merger occurred in November 2009. The different dates are not material to this litigation.

missed mortgage payments. Id., ¶17. Wells Fargo had not warned the plaintiffs that following its advice would result in foreclosure on their home. Id., ¶18. Prior to this telephone call, the defendant had not informed plaintiffs that their mortgage had been placed into foreclosure status. Id., ¶19.

The plaintiffs immediately requested reinstatement of the mortgage. On August 9, 2012, the plaintiffs paid the $53,361.10 required to reinstate the mortgage loan to good standing. Id., ¶¶20-23. This payment included approximately $2700 of fees, late charges, and penalties. Id., ¶24.

The plaintiffs allege that as a result of relying on the defendant's instructions their credit rating was irreparably damaged. Id., ¶28. They assert that their lower credit rating has rendered them unable to refinance the mortgage to Wells Fargo, as well as a second mortgage. Id., ¶¶29-30. Consequently, they will be paying interest at rates that are significantly above the market rate for at least five years. Id., ¶¶31-34. They maintain that Wells Fargo's actions have caused them severe emotional distress and financial hardship. Id., ¶¶36-37. They estimate their damages to be $402,700. Id., ¶38.

As required by Chapter 93A, the plaintiffs sent a demand letter to Wells Fargo. The demand letter, which is referenced in and attached to the Complaint, provides additional detail

regarding the timing and content of the communications between Wells Fargo and the plaintiffs. See id., Ex. A.

In the demand letter, plaintiffs assert the following. Prior to August 2012, the plaintiffs called the Wells Fargo Loan Mitigation Department to inquire "as to the availability under federal programs of restructuring their mortgage." Id., Ex. A. A Wells Fargo representative, David Tristan, advised them that there was a loan restructuring program that they "may be eligible for." Id. He further stated that "under the program the interest rate could be reduced and the principal balance may also be reduced." Id. Mr. Tristan "advised them that in order to qualify for the program they needed to stop making mortgage payments." Id. The plaintiffs complied with these instructions and filed all of the paperwork requested by Mr. Tristan. Id. He told them that "Wells Fargo would take a minimum of 60 days before responding." Id.

After not hearing from Wells Fargo for more than two months, the plaintiffs placed at least twelve more calls, each time reaching Mr. Tristan's voicemail. When they finally spoke to Mr. Tristan, he told them that "the modification application was pending, that information or documentation previously supplied . . . had not been received and needed to be sent in again or they needed to be more patient." Plaintiffs' attorney subsequently called Wells Fargo and was advised that the loan

had been placed in foreclosure. Id. The plaintiffs were forced to pay penalties and late fees to reinstate the mortgage. Id. The Complaint adds that the plaintiffs were never informed that following Mr. Tristan's instructions could lead to foreclosure. Complaint, ¶18.

The Complaint states four grounds for relief. Count I alleges unfair and deceptive business practices in violation of Chapter 93A. Id., ¶¶39-46. Count II alleges misrepresentation. Id., ¶¶47-50. Count III alleges intentional infliction of emotional distress. Id., ¶¶51-57. Count IV alleges negligent infliction of emotional distress. Id., ¶¶57-60.

Wells Fargo removed this case to the United States District Court for the District of Massachusetts in July 2013 on the basis of diversity jurisdiction. See 28 U.S.C. §§1332(a), 1446(c). The case was originally assigned to Judge Nathaniel M. Gorton, who recused himself because of a potential conflict of interest.

Wells Fargo filed a motion to dismiss all of the plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiffs have failed to state any claim on which relief can be granted. It also asserts that the plaintiffs' claims for injured credit are preempted by the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq. Finally, the defendant contends that all of the plaintiffs' claims are

preempted by the Home Owners' Loan Act ("HOLA"), 12 U.S.C. §1461, et seq., and its implementing regulations.

The court finds that the plaintiffs have adequately pled each of their claims. The court further finds that the plaintiffs' claims are not preempted by federal law. It is, therefore, denying Wells Fargo's motion to dismiss.

II. JUDICIAL NOTICE

Wells Fargo has asked that the court take judicial notice of the transition of World Savings Bank into Wachovia, and Wachovia's subsequent acquisition by Wells Fargo. See Mem. of Law in Support of Motion to Dismiss at 13 n.3. Wells Fargo states that the Federal Deposit Insurance Corporation's ("FDIC") public records reflected these facts.

A court may consider "documents incorporated by references in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (quoting In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003). A court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Ev. 201(b)(2).

The FDIC's public records indicate the following. World Savings Bank, a federal savings bank, changed its name to Wachovia Mortgage on December 31, 2007. As a federal savings bank, Wachovia was regulated by the Office of Thrift Supervision. On November 1, 2009, Wachovia became Wells Fargo Bank Southwest, a national bank, which on that same date merged into Wells Fargo Bank, also a national bank. The records indicate that on this date the regulatory agency that governed the new entity "changed . . . from Office of Thrift Supervision to Comptroller of the Currency." Federal Deposit Insurance Corporation, History of World Savings Bank, FSB (FDIC #:27076) in Warren, NJ.[3]

The court finds that the content of the FDIC's records are not subject to reasonable dispute. See Fed. R. Ev. 201(b). Moreover, plaintiffs do not contest the accuracy of these records. See Pl.'s Opp. to Def.'s Mot. to Dismiss at 9 (admitting that Wachovia was a federal savings bank and that Wells Fargo is a national bank). The information that these records contain is necessary to determine which preemption analysis is appropriate for the plaintiffs' claims. Therefore,

[3] The defendant has attached a copy of these records to its motion to dismiss. See Docket No. 9-1. These records are publicly available by: (1) going to http:research.fdic.gov/bankfind/; (2) entering "World Savings Bank FSB" in the "Bank Name" box and clicking "Find"; (3) clicking the "World Savings Bank, FSB" that has the FDIC of #27076; and then (4) clicking the "History" tab.

it is permissible and appropriate for the court to take judicial notice of the foregoing facts contained in the FDIC's public records.

III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets." In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008); see also Penalbert-Roia v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011).

A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." Twombly, 550 U.S. at 559. That is, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In considering a motion to dismiss under Rule 12(b)(6), the court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz v. Marao Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). The court "neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996) (Gorton, J.).

"Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Rodi v. S. New Eng. School of Law, 389 F.3d 5, 15 (1st Cir. 2004) (considering letters attached to the complaint in evaluating a motion to dismiss). However, there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for

official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint." Watterson, 987 F.2d at 3-4. When "a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). When such documents contradict an allegation in the complaint, the document trumps the allegation. See Clorox Co. P.R. v. Proctor & Gamble Consumer Co., 228 F.3d 24, 32 (1st Cir. 2000).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard that requires that the plaintiff state "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To plead circumstances "with particularity," a plaintiff must specify "the who, what, where, and when of the allegedly false or fraudulent representation." Rodi, 389 F.3d at 15 (1st Cir. 2004) (quoting Alt. Sys. Concepts, Inc. v. Synopsis, Inc., 374 F.3d 23, 29 (1st Cir. 2004)); see also United States ex rel. Gagne v. City of Worcester, 565 F.3d 40, 45 (1st Cir. 2009) (stating that a complaint "must specify the time, place, and content of an alleged false representation").

B. Analysis

1. Count I: Chapter 93A

Massachusetts General Laws Chapter 93A states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. ch. 93A, §(2)(a). Individuals have a private right of action under the statute. Id., §9. To prevail on a Chapter 93A claim, the plaintiff "must prove that a person who is engaged in trade or business committed an unfair or deceptive trade practice and that the [plaintiff] suffered a loss of money or property as a result." Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp.2d 255, 259 (D. Mass. 2011).

Plaintiffs' Chapter 93A claim alleges that Wells Fargo's "conduct . . . as set forth in [the demand letter] was unfair and deceptive as defined" by Chapter 93A. Complaint, ¶44. The court is considering the demand letter as part of the Complaint because it is attached to the Complaint and is incorporated by reference. See Rodi, 389 F.3d at 15.

Wells Fargo argues that plaintiffs have failed to state a claim under Chapter 93A because: (1) plaintiffs have failed to allege unfair or deceptive conduct by Wells Fargo within the meaning of Chapter 93A; and (2) plaintiffs have failed to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Neither of these contentions is correct.

a. "Unfair or Deceptive" Conduct

"Although whether a particular set of acts in their factual setting is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a c. 93A violation is a question of law." Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008) (quoting Schqanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390, 414 (1991)).

Conduct is "deceptive" within the meaning of Chapter 93A "if it could reasonably be found to have caused a person to act differently from the way he otherwise would have acted." Aspinall v. Philip Morris Cos., 442 Mass. 381, 394 (Mass. 2004) (quoting Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 777 (1980)). "The term ['deceptive'] 'goes far beyond the scope of the common law action for fraud or deceit.'" Incase, Inc. v. Timex Corp., 488 F.3d 46, 57 (1st Cir. 2007) (quoting Slaney v. Westwood Auto, Inc., 366 Mass. 688, 703 (1975)). "A successful G.L. c. 93A action based on deceptive acts or practices does not require proof that a plaintiff relied on the representation, or that the defendant intended to deceive the plaintiff, or even knowledge on the part of the defendant that the representation was false." Aspinall, 442 Mass. at 394.

In deciding whether a business practice is "unfair" under Chapter 93A, Massachusetts courts apply a three-step analysis: "(1) whether the practice is at least within the penumbra of

some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (citing PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 595 (1975)).

"[E]vidence that 'defendants misrepresented to plaintiffs the status of their [federal mortgage modification] application, their rights under [the mortgage modification program], or their eligibility for a permanent loan modification; misrepresented to plaintiffs the likelihood or imminency of foreclosure; or actually conducted a foreclosure sale in violation of [the mortgage modification] guidelines' is considered sufficiently unfair or deceptive to support a claim under Chapter 93A." Leonard v. PNC Bank, NA, No. 11-11815, 2014 WL 1117990, at *22 (D. Mass. Mar. 18, 2014) (quoting Markle v. HSBC Morg. Corp., 844 F. Supp. 2d 172, 186 (D. Mass. 2011)). However, mere failure to properly consider a plaintiff's modification or unreasonable delay in processing the application, without more, does not give rise to a Chapter 93A violation. See Gaul v. Aurora Loan Services, No. 12-10129, 2013 WL 1213065, at *9 (D. Mass. Feb. 7, 2013).

In Kirtz v. Wells Fargo Bank, N.A., No. CIV.A. 12-10690-DJC, 2012 WL 5989705, at *12 (D. Mass. Nov. 29, 2012), the

plaintiff alleged that the process of modifying her home loan was drawn out for over a year because the defendant-bank repeatedly switched her primary point of contact and required her to complete the same documents multiple times. She further alleged that they closed her application at one point, claiming that they could not reach her, when in fact they had not called her cell phone. Id. The court concluded that these allegations "surpass 'minor delay or trivial clerical flaws' such that they rise to the level of a Chapter 93A violation." Id. (quoting Morris v.BAC Home Loans Servicing, L.P., 775 F. Supp.2d 255, 263 (D. Mass. 2011)). The court also held that the fact that the defendant scheduled a foreclosure while the plaintiff was being considered for a loan modification was itself sufficient to constitute an unfair or deceptive practice. Id. at *13.

Viewing the facts in the light most favorable to the plaintiffs, the court finds that the Complaint adequately alleges a plausible violation of Chapter 93A. The plaintiffs allege that Wells Fargo urged them to stop paying their mortgage in order to seek a loan modification without telling them of the risks involved, forced them to wait months while late fees, interest, and penalties accrued, repeatedly required the plaintiffs to submit the same documents, and refused to provide the plaintiffs any information regarding the status of their mortgage. Ultimately, Wells Fargo placed the plaintiffs' loan

in foreclosure and forced the plaintiffs to pay late fees and penalties to reinstate the mortgage. If proven, this would cosntitute "unfair" business conduct in violation of Chapter 93A. See Kirtz, 2012 WL 5989705, at *12.

In addition, Wells Fargo's alleged advice to plaintiffs to stop paying their mortgage would be "deceptive" within the meaning of Chapter 93A. If, as alleged, Wells Fargo told the plaintiffs to stop paying their mortgage without informing them of the risk of foreclosure, Wells Fargo would have misled plaintiffs and caused them "to act differently from the way they would have acted." Aspinall, 442 Mass. at 394; Leonard, 2014 WL 1117990, at *23. As a result, they incurred significant fees, penalties, and harm to their credit score.

Therefore, the court concludes that plaintiffs have alleged conduct by Wells Fargo that would be "unfair or deceptive" in violation of Chapter 93A.

b. Rule 9(b) Pleading Standard

Rule 9(b)'s heightened pleading standard applies to allegations of fraud or mistake. The plaintiffs' Chapter 93A claim is partially based on Wells Fargo's alleged failure to disclose the risk that following its advice would result in foreclosure. As explained below regarding plaintiffs' misrepresentation claim, the Complaint is sufficient "to give notice to defendant[] regarding the discrete acts [the

plaintiffs] allege[] were unfair or deceptive 'within the penumbra of some concept of unfairness [or deceptiveness].'" Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 281 (1st Cir. 2013) (last alteration in original) (quoting Kenda Corp., Inc. v. Pot O' Gold Money Leagues, 328 F.3d 216, 281 (1st Cir. 2003)).

In view of the foregoing, the court concludes that the plaintiffs have sufficiently stated a claim for a violation of Chapter 93A.

2. Count II: Misrepresentation

In order to state a claim for fraudulent misrepresentation under Massachusetts law, the plaintiff must allege that: (i) the defendant made a false representation of a material fact; (ii) the defendant knew that the fact was false; (iii) the defendant intended that the plaintiff rely on the misrepresentation; and (iv) the plaintiff reasonably relied on the defendant's misrepresentation to his detriment. See Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 68 (1st Cir. 2005). It is "sufficient to show proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; actual intent to deceive on the part of the defendants need not be shown." Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458-59 (2002). Federal

Rule of Civil Procedure 9(b) requires that a plaintiff plead misrepresentation with particularity. See Alternative System Concepts, 374 F.3d at 29.

The plaintiffs allege that Wells Fargo knew, or should have known, that their mortgage would be placed in foreclosure if they followed its advice and that the plaintiffs relied on this advice to their detriment.[4] Wells Fargo argues that this claim should be dismissed because the plaintiffs have failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure Rule 9(b).

Rule 9(b) requires the plaintiffs to specify "the who, what, where, and when of the allegedly false or fraudulent representation." Rodi, 389 F.3d at 15 (quoting Alt. Sys. Concepts, 374 F.3d at 29). "In other words, Rule 9(b) requires the pleader 1) to specify the allegedly fraudulent statements, 2) to identify the speaker, 3) to plead when and where the statements were made and 4) to explain what made the statements fraudulent." See CardiAQ Valve Technologies, Inc. v. Neovasc, Inc., 14-cv-12405, 2014 WL 5776157, at *4 (D. Mass. Nov. 6, 2014).

---

[4] The court construes the Complaint to allege a claim of intentional misrepresentation, but not a claim of negligent misrepresentation. Therefore, it construes the allegations that defendant should have known of the undisclosed risk of foreclosure as facts from which actual knowledge can be inferred, rather than as an independent, actionable basis for recovery.

The plaintiffs have identified the speaker as David Tristan, a Wells Fargo representative. They have also identified the allegedly fraudulent statement.[5] The plaintiffs allege that Tristan did not disclose the risk that nonpayment would result in foreclosure. Having provided information in response to a question from plaintiffs about restructuring their mortgage, Tristan "had a duty to disclose all material facts bearing on that matter and [would have] breached that duty by failing to do so . . . ." See Lynch v. Cotton, 56 Mass. App. Ct. 1116, slip op. at *2 (2002). In view of his position at Wells Fargo, it is reasonable to infer that Tristan knew of the risk of foreclosure. The risk of foreclosure was material to the plaintiffs' decision to stop making loan payments and pursue a loan modification. "Providing only such incomplete information is as actionable as making a knowingly fraudulent misrepresentation." Id. (citing Restatement (Second) of Torts §529 (1972)).

Finally, the plaintiff has adequately alleged the "when and where" of the misrepresentation. It is alleged that the misrepresentation occurred on a telephone call to the Wells Fargo Loan Mitigation Department. See Complaint, Ex. A. It is

[5] The Chapter 93A demand letter references several alleged misrepresentations. However, the claim for misrepresentation only references the failure to disclose the risk of foreclosure. Therefore, the court understands plaintiffs to only be relying on that alleged misrepresentation.

also alleged that the misrepresentation occurred between the time that Wells Fargo merged with Wachovia in November 2009, id. ¶9, and the summer of 2012, id. Ex. A. If it is material to Wells Fargo's defense of this action, Wells Fargo can determine the date of the call by reviewing its telephone records. Given the context of this case, the court concludes that the plaintiff's allegations are sufficiently clear to "give notice to defendants of the plaintiffs' claim . . . ." See Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).

In view of the foregoing, the plaintiffs have pleaded fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Accordingly, the defendant's motion to dismiss the plaintiffs' misrepresentation claim is being denied.

3. Count III: Intentional Infliction of Emotional Distress

"The standard for making a claim of intentional infliction of emotional distress is very high." Polay v. McMahon, 468 Mass. 379, 385 (2014) (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996)). Under Massachusetts law, to establish intentional infliction of emotional distress ("IIED") a plaintiff must prove "(1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct, . . . (2) that the defendant's conduct was extreme and outrageous,

beyond all possible bounds of decency and utterly intolerable in a civilized community, (3) the actions of the defendant were the cause of the plaintiff's distress, and (4) the emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (quoting Payton v. Abbott Labs, 386 Mass. 540, 555 (1982)).

"Liability cannot be predicated on 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" Id. (quoting Foley v. Polaroid Corp., 400 Mass. 82, 99 (1987)). "Conduct qualifies as extreme and outrageous only if it 'go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" Polay, 468 Mass. at 386 (quoting Roman v. Trustees of Tufts College, 461 Mass. 707, 718 (2012)). "A judge may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level." Id.

Contrary to Wells Fargo's contention, viewing the facts in the light most favorable to the plaintiffs and drawing all inferences in their favor, the plaintiffs have adequately alleged conduct by Wells Fargo that was "extreme and outrageous." The plaintiffs are an elderly couple with minimal income. See Complaint, Ex. A at 3. They were current in their mortgage payments. Id., ¶9. Wells Fargo allegedly induced them to stop making mortgage payments by promising to consider them for a mortgage modification. Id., ¶¶10-11. Instead of considering them for a mortgage modification as promised, Wells Fargo allegedly placed their mortgage in foreclosure. Id., ¶17. Wells Fargo allegedly had never told the plaintiffs that following its instructions could lead to foreclosure. Id., ¶18. Instead, Wells Fargo forced the plaintiffs to pay extra fees to avoid losing the mortgaged property. Id., ¶20-24. Any such deceitful and extortionate conduct, when committed by a financial institution holding a mortgage on plaintiffs' property, would be "beyond all possible bounds of decency." Polay, 468 Mass. at 386.

Drawing all inferences in the plaintiff's favor, the Complaint also adequately alleges that Wells Fargo knew, or should have known, that its alleged course of conduct would cause the plaintiff's severe emotional distress. Any reasonable lending institution would recognize that deceiving a property

owner into stopping payments and then placing their property in foreclosure would probably cause extreme emotional distress. Taking all of the facts alleged by the plaintiff as true, a reasonable factfinder could conclude that Wells Fargo "knew or should have known that emotional distress was the likely result of [its] conduct." Tetrault, 425 Mass. at 466 (1997).

In view of the foregoing, the plaintiffs have adequately stated a claim for IIED and, therefore, Wells Fargo's motion to dismiss that count is being denied.

4. Count IV: Negligent Infliction of Emotional Distress

Under Massachusetts law, a plaintiff seeking to recover for a claim of negligent infliction of emotional distress ("NIED") must prove: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Conley v. Romeri, 60 Mass. App. Ct. 799, 801 (2004) (quoting Payton, 386 Mass. at 557).

The plaintiffs allege that the defendant's conduct was negligent, that it would cause emotional distress in a reasonable person, and that it caused the plaintiffs to suffer severe emotional distress. See Complaint, ¶¶59-62. The plaintiffs further allege that they "have experienced anxiety,

loss of sleep, loss of appetite, and been unable to continue their customary life style" as a result of Wells Fargo's conduct. Id., ¶62. Wells Fargo argues that plaintiffs have failed to state a claim for NIED because they have not alleged that Wells Fargo owed them a duty of care. It further argues that plaintiffs have failed to plead causation and objective symptomatology as required to state a claim for NIED. The court concludes that plaintiffs have adequately pled a claim for NEID.

In order to satisfy the "negligence" element of an NIED claim, "there must be a showing of a duty of care owed to the plaintiff." Conley v. Romeri, 60 Mass. App. Ct. at 801. The court determines whether the defendant owes a duty of care to the plaintiff as a matter of law, "by reference to existing social values and customs and appropriate social policy." Id. (quoting O'Sullivan v. Shaw, 431 Mass. 201, 2013 (2000)).

Wells Fargo allegedly advised the plaintiffs to stop making loan payments so that they could be considered for a loan modification. If it did so, Wells Fargo would have had a duty to disclose to plaintiffs all related material facts. See Lynch, 56 Mass. App. Ct. 1116. Like all businesses, Wells Fargo was required "to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on [it], the person of ordinary caution and prudence ought to exercise under the particular circumstances." Aleo v. SLB Toys

USA, Inc., 466 Mass. 398, 419 (2013). If Wells Fargo advised plaintiff to stop making payments and seek a modification, it had a duty to exercise reasonable care in assuring that it disclosed to plaintiffs the risks of foreclosure if they followed Wells Fargo's advice.

The plaintiffs have also alleged sufficient "objective symptomatology" to support a claim for NIED. Plaintiff must "provide an objective corroboration of the emotional distress alleged." Sullivan v. Boston Gas Co., 414 Mass. 129, 139 (1993). Here, as indicated earlier, plaintiffs allege that they suffered "anxiety, loss of sleep, loss of appetite, and [have] been unable to continue their customary life style" due to the defendants' actions. Complaint, ¶61. These alleged objective symptoms constitute "more than 'mere upset, dismay, humiliation, grief and anger.'" Rodriguez v. Cambridge Housing Authority, 443 Mass. 697, 702 (2005) (quoting Sullivan, 414 Mass. at 137). They are similar to the types of symptoms that Massachusetts courts have held sufficient to support a claim for NIED. See, e.g., Sullivan, 414 Mass. at 131 (tension headaches, concentration and reading problems, sleeplessness, upset stomach, nightmares and depression); Kelly v. Brigham & Women's Hosp., 51 Mass. App. Ct. 297, 306 (2001) (depression, cramps, shortness of breath, and nightmares); Bresnahan v. McAuliffe, 47 Mass. App. Ct. 278, 284 (1999) (uncontrollable crying spells,

stomach pain, headaches, loss of concentration, depression, anger, anxiety, loss of sexual relationship, and nightmares).

Finally, the plaintiffs have adequately that defendant's conduct caused them harm. They allege that "[t]he conduct of defendants has caused the plaintiff emotional distress" and that the foregoing alleged physical manifestations of the emotional distress are "a direct result of the actions of defendants." Complaint, ¶60.

Accordingly, the court finds that the plaintiffs have adequately stated a claim for NIED.

IV. PREEMPTION

"The doctrine of federal preemption is rooted in the Supremacy Clause, which provides that 'the Laws of the United States . . . shall be the supreme Law of the land; and the Judges in every state shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" SPGGC, LLC v. Ayotte, 488 F.3d 525, 530 (1st Cir. 2007) (quoting U.S. Const. art VI, cl. 2). Whether a federal law preempts state law depends on whether Congress intended to supplant state law. See Barnett Bank of Marion Cnty., N.A. v. Nelson, 517 U.S. 25, 30 (1996). Both federal statutes and federal regulations can be preemptive.

Hillsborough Cnty., Fla. v. Automated Medical Laboratories, Inc., 471 U.S. 25, 30 (1996).

Wells Fargo argues that HOLA preempts the plaintiffs' claims. The court finds, however, that HOLA preemption does not apply to this case. Instead, the issue of preemption must be analyzed under the National Banking Act ("NBA"). The court finds that the NBA does not preempt plaintiffs' claims.

A. Home Owners' Loan Act Preemption

When Congress enacted HOLA, 12 U.S.C. §1461, et seq., it initially invested regulatory authority in the Federal Home Loan Bank Board ("FHLBB"). See Fidelity Federal Sav. and Loan Ass'n v. de la Cuesta, 458 U.S. 141, 159 (1982). HOLA authorized the FHLBB "to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations,' or 'Federal mutual savings banks' . . . ." Id. at 160-61 (quoting 12 U.S.C. §144(a)(1) (1976 ed., Supp. IV)) (emphasis omitted).

In 1989, Congress amended HOLA to transfer this mandate to the Office of Thrift Services ("OTS"). See Henning v. Wachovia Mortg., FSB, 969 F. Supp.2d 135, 145 (D. Mass. 2013) (Young, J.) (citing 12 U.S.C. §1462a). In 1996, OTS issued 12 C.F.R. §560.2, which provided that "OTS hereby occupies the entire field of lending regulation for federal savings associations." 12 C.F.R. §560.2(a).

Wells Fargo contends that plaintiffs' claims are preempted by HOLA and OTS regulation 12 C.F.R. §560.2. Wachovia was a federal savings bank when it originated plaintiffs' mortgage. Wachovia was, therefore, subject to HOLA and regulated by OTS. See 12 U.S.C. §1464. However, the plaintiffs' allegations concern misconduct by Wells Fargo after its merger with Wachovia. Wells Fargo is a national bank, which is regulated by the Office of the Comptroller of the Currency ("OCC") under the NBA. See 12 U.S.C. §24. Therefore, the question is whether HOLA preemption applies to state law claims based solely on post-merger conduct by a national bank when the underlying mortgage was originated by a federal savings bank.

Several district courts have applied HOLA preemption to Wells Fargo's handling of Wachovia-originated mortgages. See, e.g., Appling v. Wachovia Mortgage, FSB, 745 F. Supp. 2d 961, 970-71 (N.D. Cal. 2010); Haggarty v. Wells Fargo Bank, N.A., No. C 10-02416, 2011 WL 445183, at *4 (N.D. Cal. Feb. 2, 2011). However, "courts so holding generally 'cite either (a) nothing, (b) each other, or (c) generic statements of law about corporations succeeding to the rights of the entities they acquire.'" Rijhwani v. Wells Fargo Home Mortgage, Inc., No. C 13-05881, 2014 WL 890016, at *6 (N.D. Cal. March 3, 2014) (quoting Gerber v. Wells Fargo Bank, N.A., 2012 WL 413997, at *4 (D. Ariz. Feb. 9, 2012)).

In contrast, other district courts have concluded that the timing of the conduct giving rise to the state law claims governs whether HOLA preemption applies: claims that arise from the conduct of a federal savings association, in this case Wachovia, before the merger are governed by HOLA preemption and claims arising after the merger, attributable to Wells Fargo's conduct, are not. See, e.g., Hixson v. Wells Fargo Bank, NA, No. C 14-285, 2014 WL 3870004, at *3 (N.D. Cal. Aug. 6, 2014) (collecting cases); Penermon v. Wells Fargo Bank, N.A., No. 14-CV-00065, 2014 WL 2754596, at *8 (N.D. Cal. June 11, 2014); Leghorn v. Wells Fargo Bank, N.A., 950 F. Supp. 2d 1093, 1107-08 (N.D. Cal. 2013) (collecting cases); Gerber, 2012 WL 413997, at *4. As the court explained in Penermon:

> Put simply, HOLA preemption applies where the allegations concern actions taken by a federal savings association or bank, even if that federal savings association is later acquired by a national bank. So, while Wells Fargo does inherit the liabilities and possible defenses that Wachovia could raise about its own conduct, Wells Fargo cannot violate state laws when servicing loans that were originated by an entity regulated by HOLA.

2014 WL 2754569, at *8.

This court concludes that HOLA preemption does not apply to Wells Fargo's conduct in servicing mortgages originated by Wachovia. This conclusion is supported by the text of HOLA and the OTS regulations, which evinces no intent to affect the conduct of national banks. HOLA only authorized the OTS to

regulate federal savings associations, not national banks. See 12 U.S.C. §1464(a)(1). According to 12 C.F.R. §560.2, HOLA preempts "state laws affecting the operations of federal savings associations," but not state laws that "only incidentally affect the lending operations of Federal savings associations." 12 C.F.R. §560.2(a), (c). State law claims that arise out of Wachovia's lending operations or its conduct in servicing loans would be analyzed according to HOLA preemption because they affect the operations of a federal savings association. However, state law claims arising out of Wells Fargo's conduct after Wachovia no longer existed do not "affect[] the operations of federal savings associations" because Wells Fargo is not a federal savings association. See id.; Gerber, 2012 WL 413997, at *4.

In view of the foregoing, the court concludes that HOLA preemption does not apply to plaintiff's claims. Because Wells Fargo is a national bank, the court must determine whether the NBA preempts the plaintiff's claims.

B. National Banking Act Preemption

NBA preemption is "similar, although not identical" to HOLA preemption. See Dixon v. Wells Fargo Bank, N.A., 798 F. Supp. 2d 336, 353 n.7 (D. Mass. 2011). Under the NBA, "[f]ederally chartered banks are subject to state laws of general application in their daily business to the extent that such laws do not

conflict with the letter or the general purposes of the act." Watters v. Wachovia Bank, N.A., 550 U.S. 1, 11 (2007).

The OCC, which administers the NBA, has promulgated regulations concerning the mortgage activities of national banks. OCC regulation 12 C.F.R. §34.4 provides in pertinent part that:

> (a) A national bank may make real estate loans under 12 U.S.C. §371 and § 34.3, without regard to state law limitations concerning:
>
> . . .
>
> (4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> . . .
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
>
> . . .
>
> (b) State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent consistent with the decision of the Supreme Court in Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al., 517 U.S. 25 (1996):
>
> (1) Contracts;
>
> (2) Torts;
>
> . . . .

Barnett Bank held that ordinary preemption principles apply under the NBA. See 517 U.S. at 32. Accordingly, states may regulate national banks where "doing so does not prevent or significantly interfere with the national bank's exercise of its powers." Id. at 32-33. A state law will be preempted by the NBA only if it is in "irreconcilable conflict" with the NBA or OCC regulations promulgated thereunder. Id. at 31.

"State laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its real estate lending powers," and are not necessarily preempted by the NBA. Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 555 (9th Cir. 2010). Generally, the NBA does "not preempt state laws that are predicated on the duty not to deceive.'" In re JPMorgan Chase Mortg. Modification Litig., 880 F.Supp.2d 220, 237 (D. Mass. 2012) (quoting Altria Grp., Inc. v. Good, 555 U.S. 70, 91 (2008)).

The Seventh Circuit has noted a distinction between "claims asserting 'conventional' misrepresentation or breach of contract (which [a]re not preempted) from those that [] effectively impose[] state law rules governing mortgage servicing and thereby 'interfere[] with federal regulation of disclosure, fees, and credit terms.'" Wigod v. Wells Fargo Bank, N.A., 673

F.3d 547, 578 (7th Cir. 2012) (quoting In re Ocwen Loan Servicing, LLC Mortg. Servicing Lit., 491 F.3d 639, 644-46 (7th Cir. 2011)). As the court explained:

> Suppose an S & L signs a mortgage agreement with a homeowner that specifies an annual interest rate of 6 percent and a year later bills the homeowner at a rate of 10 percent and when the homeowner refuses to pay institutes foreclosure proceedings. It would be surprising for a federal regulation to forbid the homeowner's state to give the homeowner a defense based on the mortgagee's breach of contract. Or if the mortgagee . . . fraudulently represents to the mortgagor that it will forgive a default, and then forecloses, it would be surprising for a federal regulation to bar a suit for fraud . . . . Enforcement of state law in either of the mortgage-servicing examples above would complement rather than substitute for the federal regulatory scheme.

Id. (quoting In re Ocwen, 491 F.3d at 643-44). This reasoning extends to a state statutory unfair business practice claim that sounds in misrepresentation or fraud. See id. at 579.

While Wigod concerned HOLA preemption, its reasoning also applies under the NBA. See In re JPMorgan, 880 F. Supp. at 236-37. As Judge Richard Stearns has explained, "[t]o the extent that plaintiffs' consumer protection claims are based on alleged conduct that would be deemed fraudulent in any business context, the claims do not undermine the uniform 'processing, origination, and servicing' of mortgages among national banks.'" See id.

None of the plaintiffs' claims would "significantly interfere with" on Wells Fargo's mortgage servicing activities.

Each of the plaintiffs' claims alleges that Wells Fargo committed an actionable wrong when it induced the plaintiffs to stop loan payments without warning them of the risk of foreclosure, failed to respond to their requests for information, and then placed their mortgage in foreclosure and extorted late fees from them in order to reinstate the mortgage. These claims do not allege that Wells Fargo is required to service its mortgages in a certain way or that the plaintiffs were entitled to a loan modification. Instead, they allege that, regardless of how Wells Fargo chooses to service its mortgages, it must do so in a manner that is not deceptive. See id. Therefore, plaintiffs' claims involve laws that "complement rather than substitute for" the NBA regulatory regime. Wigod, 673 F.3d at 578. Requiring Wells Fargo to refrain from deceiving those to whom it has loaned money will not "significantly interfere with the national bank's exercise of its powers." See Barnett Bank, 517 U.S. at 32-33. Therefore, the plaintiff's claims are not preempted by the NBA.

C. Fair Credit Reporting Act Preemption

Wells Fargo also argues that plaintiffs' claims for damages based on impairment to their credit rating are preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, et seq. The provision of the FCRA that Wells Fargo relies on preempts state law claims arising out of a bank's furnishing of credit

information. See 15 U.S.C. §1681t(b)(1)(F); 15 U.S.C. §1681s-2. Plaintiffs' claims are not based on Wells Fargo's reporting of credit scores under the FCRA. Rather, the claims arise out of the alleged deceptive conduct that Wells Fargo engaged in while servicing their mortgage. Consequently, the FCRA does not preempt the plaintiffs' claims.

V. ATTORNEYS' FEES

Plaintiffs request attorneys' fees and costs "especially because [defense counsel] represented the defendant in a similar case . . . where the Court denied a motion to dismiss based on a HOLA preemption argument." The fact that a district court has previously rejected an argument does not mean that Federal Rule of Civil Procedure 11(b) has been violated. As discussed earlier, district courts have differed concerning HOLA preemption in analogous case. Therefore, the plaintiffs' request for fees and costs is being denied.

VI. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Defendant Wells Fargo's Motion to Dismiss (Docket No. 8) is DENIED.

2. Plaintiffs' request for costs and fees (Docket No. 14) is DENIED.

3. This case is referred to the magistrate judge for a scheduling conference and subsequent pretrial proceedings.

UNITED STATES DISTRICT JUDGE