UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COSMO N. CREMALDI and               )
CATHERINE L. CREMALDI,              )
    Plaintiffs                      )
                                    )
        v.                          )        C.A. No. 13-11767-MLW
                                    )
WELLS FARGO BANK, N.A. d/b/a        )
WELLS FARGO HOME MORTGAGE,          )
    Defendant.                      )

MEMORANDUM AND ORDER

WOLF, D.J.                                    March 30, 2017

On March 4, 2013, Cosmo and Catherine Cremaldi (the "Cremaldis") filed this action in the Middlesex Superior Court for the Commonwealth of Massachusetts alleging that defendant Wells Fargo Bank, N.A. ("Wells Fargo") irreparably damaged their credit, caused them to incur excessive interest charges, and caused them emotional distress while reviewing their eligibility for a loan modification. Plaintiffs allege that Wells Fargo repeatedly encouraged them to apply for a loan modification for which they were not qualified and instructed them to cease making mortgage payments. Plaintiffs further allege that after requiring them to wait for months while late fees and penalties accrued, Wells Fargo placed their mortgage in foreclosure without considering them for a modification. Plaintiffs allege that, as a result, they were required to pay Wells Fargo thousands of dollars in fees to reinstate their mortgage and avoid foreclosure.

Plaintiffs allege violations of Mass. Gen. Laws Chapter 93A (Count I), misrepresentation (Count II), intentional infliction of emotional distress (Count III), and negligent infliction of emotional distress (Count IV). Defendant removed the case to this court on July 24, 2013. The case was referred to Magistrate Judge Jennifer C. Boal for full pretrial purposes, including a report and recommendation on any dispositive motions. See Docket No. 17.

On June 29, 2016, defendant moved for summary judgment. See Docket No. 78. On August 2, 2016, plaintiffs moved to strike certain portions of the record submitted by defendant in support of its motion for summary judgment. See Docket No. 89. On August 16, 2016, defendant filed a cross motion to strike certain portions of the record submitted by plaintiffs in support of its opposition to defendant's motion for summary judgment. See Docket No. 92.

The Magistrate Judge issued her Report and Recommendation on January 3, 2017. See Docket No. 108. In it, she recommends that the court allow defendant's motion to strike and allow in part and deny in part plaintiffs' motion to strike. In addition, she recommends that the court allow defendant's motion for summary judgment. On January 16, 2017, plaintiffs filed objections to the Report and Recommendation (Docket No. 110), and on January 30, 2017, defendant filed an opposition to those objections (Docket No. 112).

2

The court has reviewed de novo the issues to which a proper objection has been made. See Fed. R. Civ. P. 72(b)(3). The court finds the Report and Recommendation to be thorough, thoughtful, and persuasive. Therefore, the Report and Recommendation is being incorporated in this Memorandum and Order and is being adopted.

In view of the foregoing, it is hereby ORDERED that:

1. The Magistrate Judge's Report and Recommendation (Docket No. 108) is ADOPTED and INCORPORATED pursuant to 28 U.S.C. §636.

2. For the reasons stated in the Report and Recommendation, Defendant's Motion to Strike (Docket No. 92) is ALLOWED.

3. For the reasons stated in the Report and Recommendation, Plaintiffs' Motion to Strike (Docket No. 89) is ALLOWED in part and DENIED in part.

4. For the reasons stated in the Report and Recommendation, Defendant's Motion for Summary Judgment (Docket No. 78) is ALLOWED.

5. Judgment shall enter for defendant.

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COSMO N. CREMALDI and<br>CATHERINE L. CREMALDI,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A. d/b/a<br>WELLS FARGO HOME MORTGAGE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 13-11767-MLW |

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PARTIES' CROSS-MOTIONS TO STRIKE
[Docket Nos. 78, 89, 92]

January 4, 2017

Boal, M.J.

Plaintiffs Cosmo and Catherine Cremaldi have brought this action against defendant

Wells Fargo Bank, N.A. d/b/a Wells Fargo Home Mortgage, alleging that Wells Fargo

irreparably damaged their credit, caused them to incur excessive interest charges, and caused

them emotional distress while reviewing their eligibility for a loan modification. Plaintiffs allege

that Wells Fargo repeatedly encouraged them to apply for a loan modification for which they

were not qualified and instructed them to cease making mortgage payments. After requiring the

plaintiffs to wait for months while late fees and penalties accrued, Wells Fargo placed their

mortgage in foreclosure without considering them for a modification. The plaintiffs further

allege that they were required to pay Wells Fargo thousands of dollars in fees to reinstate their

mortgage and avoid foreclosure.

Wells Fargo has filed a motion for summary judgment in its favor on all of plaintiffs' claims. Docket No. 78.[1] For the following reasons, the Court recommends that the District Judge assigned to this case grant the motion.

I.   PROCEDURAL BACKGROUND

On March 1, 2013, the Cremaldis filed their complaint in Massachusetts Superior Court. See Docket No. 7 at 38. Defendants removed the case to this Court on July 24, 2013. Docket No. 1.

On August 30, 2013, Wells Fargo filed a motion to dismiss, Docket No. 8, which the District Court denied. Docket No. 16.

The Cremaldis filed an amended complaint on May 15, 2015. Docket No. 27. On the same date, Wells Fargo filed a motion for reconsideration of the District Court's decision denying its motion to dismiss, which the District Court denied on November 2, 2015. Docket No. 37.

Wells Fargo filed the instant motion for summary judgment on June 29, 2016. Docket No. 78. On August 2, 2016, the Cremaldis filed their opposition as well as a motion to strike certain portions of the record. Docket Nos. 87, 89. Wells Fargo filed a reply[2] and a cross-motion to strike on August 16, 2016. Docket Nos. 90, 92. The Court heard oral argument on December 14, 2016.

---

[1] On April 1, 2015, the District Court referred this case to the undersigned for full pretrial management, including report and recommendation on dispositive motions. Docket No. 17.

[2] At oral argument, counsel for Wells Fargo withdrew the argument made at pages 5-6 of the reply that Regulation X required Wells Fargo to communicate to the Cremaldis loss mitigation options, including a loan modification.

II.   <u>FACTS</u>

    A.   <u>Scope Of The Record</u>

Both parties have moved to strike evidence proffered by the other in support of their arguments.  Docket Nos. 89, 92.  Because the motions to strike bear on the evidence that the Court may consider in deciding Wells Fargo's motion for summary judgment, the Court is considering them first.

    1.   <u>Plaintiffs' Motion To Strike</u>

The Cremaldis have moved to strike the affidavits of Kimberly Ann Mueggenberg and Dallin Wilson.  Docket No. 89.  In the alternative, they move the Court to "strike all assertions set forth in said affidavits except as such portions as the Court deems appropriate to consider relative to [Wells Fargo's motion for summary judgment]."  <u>Id.</u> at 1.

Rule 56(c)(4) requires affidavits in support or opposition of motions for summary judgment to be made "on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  In deciding a motion for summary judgment, "a court may take into account any material that would be admissible or usable at trial . . . [but] inadmissible evidence may not be considered."  <u>Facey v. Dickhaut</u>, 91 F. Supp. 3d 12, 19 (D. Mass. 2014) (quoting <u>Horta v. Sullivan</u>, 4 F.3d 2, 8 (1st Cir. 1993)).  "If evidence cannot be presented in a form that would be admissible at trial, the court may not rely on it."  <u>Id.</u> (citations omitted).

A party moving to strike an affidavit must specify the objectionable portions of the affidavit and the specific grounds for objection.  <u>Id.</u> (citations omitted).  The Court will disregard only those portions of the affidavit that are inadmissible and consider the rest of it.  <u>Id.</u>

First, the Cremaldis request that the Court strike the entire Affidavit of Kimberly Ann Mueggenberg in Support of Wells Fargo's Motion for Summary Judgment ("Mueggenberg Aff."). Docket No. 80 at 14-182. Ms. Mueggenberg is the Vice President of Loan Documentation at Wells Fargo. Mueggenberg Aff. at ¶ 1. The Cremaldis object to the Court's consideration of Ms. Mueggenberg's affidavit because "she has no personal knowledge of the matters described in the business records for which she testifies, her testimony in some cases is misleading and inaccurate, and because Wells Fargo presumably has employees with personal knowledge of such matters and has not secured their affidavits or otherwise offered their testimony to this Court." Id. at 4-5.

Ms. Mueggenberg specifically avers that in the regular performance of her job functions, she is "familiar with the business records maintained by Wells Fargo for the purpose of servicing mortgage loans and [has] personal knowledge of the operations and the circumstances surrounding the preparation, maintenance and retrieval of records in Wells Fargo's recordkeeping systems."[3] Mueggenberg Aff. at ¶ 3. This statement forms a sufficient foundation for an assertion of personal knowledge of the records attached to her affidavit. See Brown v. Bank of Am., No. 13-13256-PBS, 2015 WL 5163045, at *3 (D. Mass. Sept. 3, 2015); Foregger v. Residential Credit Solutions, Inc., No. 12-11914-FDS, 2014 WL 1364788, at *4 (D. Mass. Apr. 4, 2014); see also Facey v. Dickhaut, 91 F. Supp. 3d at 20-21 ("Motions to strike have been denied even when the declarant did not personally experience the matters discussed in the affidavit, but did review business or public records and included information from those records with the affidavit."). To the extent that the Cremaldis challenge the accuracy of Ms.

---

[3] In her affidavit, Ms. Mueggenberg properly authenticates the records attached to her affidavit as records of a regularly conducted activity under Rule 803(6) of the Federal Rules of Evidence. Mueggenberg Aff. at ¶ 3.

Mueggenberg's statements or the substance of the underlying records, those arguments go to the weight of Ms. Mueggenberg's testimony and not to its admissibility. See Brown v. Bank of Am., 2015 WL 5163045, at *3. Therefore, the Court finds that Ms. Mueggenberg's affidavit may be considered in connection with Wells Fargo's motion for summary judgment.

The Cremaldis also object to consideration of the Affidavit of Dallin Wilson, Esq. in Support of Wells Fargo's Motion for Summary Judgment ("Wilson Aff."). Docket No. 80 at 184-446. Attorney Wilson represents Wells Fargo in this matter. Attorney Wilson's affidavit authenticates and attaches documents that the Cremaldis produced in this litigation, or documents that he personally retrieved from publicly available sources. See Docket No. 92 at 4. The Cremaldis argue that the Court should not consider the affidavit to the extent that Attorney Wilson is characterizing the substance of the exhibits to the affidavit. Docket No. 89 at 5. The Cremaldis also argue that Attorney Wilson's characterizations are inconsistent with, if not intentionally misleading, regarding the contents of the documents. Id. Wells Fargo acknowledges that Attorney Wilson's descriptions of the contents of the documents are not evidence and that the Court may reach its own conclusions from its review of the documents. Docket No. 92 at 4-5. The Court therefore finds that it is appropriate to consider Attorney Wilson's affidavit only to the extent that it authenticates documents. The Court will not consider Attorney Wilson's characterization regarding the contents of the documents attached to his affidavit.

Accordingly, the Court recommends that the District Judge grant in part and deny in part the Cremaldis' motion to strike as described above.

2.   Wells Fargo's Motion To Strike

Wells Fargo has moved to strike Exhibit 4 to the Cremaldis' opposition to Wells Fargo's

motion for summary judgment. Docket No. 92 at 12-14. Wells Fargo states that Exhibit 4 is a

document captioned "Customer Account Activity Statement" with the heading "Attorney Work

Product – Do Not Distribute." Id. at 12. In preparation for an earlier mediation session, Wells

Fargo provided a copy of Exhibit 4 to the Cremaldis to allow them to better understand their

payment history and to facilitate settlement in this matter. Id. In his email transmitting Exhibit 4

to plaintiffs' counsel, Wells Fargo's counsel stated the following:

> Please note that this payment history was created specifically for settlement
> purposes only and is not admissible as evidence. Also note that the
> document is marked as "Work Product" and Wells Fargo is not waiving its
> right to assert privilege with respect to this document or any other during
> the course of litigation.

Docket No. 92-3.

Rule 408 of the Federal Rules of Evidence prohibits the introduction into evidence of

settlement offers or conduct or statements made during settlement negotiations "to prove or

disprove the validity of amount of a disputed claim." Fed. R. Evid. 408. However, Rule 408

does not protect preexisting information simply because it was presented to the adversary in

compromise negotiations. Fed. R. Evid. 408, Advisory Committee Notes, 2006 Amendment. At

oral argument, counsel for Wells Fargo stated that Exhibit 4 was created by Wells Fargo for

counsel's use in this litigation and was not prepared specifically for the mediation. Accordingly,

Rule 408 does not preclude the use of Exhibit 4.

To the extent that Wells Fargo argues that Exhibit 4 is protected by the attorney work

product doctrine, see Docket No. 99 at 1, any privilege was waived when Wells Fargo shared the

document with its adversary. See Bryan Corp. v. Chemwerth, Inc. 296 F.R.D. 31, 38 (D. Mass.

2013) (citations omitted) (work product protection is waived when documents are disclosed to

adversary); see also United States v. Massachusetts Institute of Tech., 129 F.3d 681, 687 (1st Cir.

1997) ("[W]ork product protection is provided against 'adversaries,' so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection.").

Nevertheless, the Cremaldis have not properly authenticated Exhibit 4 as a business record or otherwise. Indeed, Wells Fargo maintains that the document has not been verified as accurate but was rather prepared solely to be of assistance to counsel in understanding the payment history for the Cremaldis' loan. See Docket No. 99 at 1. Because the Cremaldis have failed to establish that the document would be admissible in evidence, the Court may not properly rely on it. Accordingly, the Court recommends that the District Court grant Wells Fargo's motion to strike.

B.   FACTS[4]

1.   Background

On May 2, 1972, the Cremaldis purchased the real estate located at 11-13 William Street, Cambridge, Massachusetts (the "William Street Property") for $44,000.[5] On October 30, 1974, the Cremaldis purchased the real estate located at 588-590 Franklin Street, Cambridge, Massachusetts (the "Franklin Street Property") for $40,000.[6] On October 29, 1991, the Cremaldis purchased the real estate located at 31-33 Putnam Avenue, Cambridge, Massachusetts

---

[4] Because this case is before the Court on a motion for summary judgment, the Court sets out any disputed facts in the light most favorable to the Cremaldis, the non-moving parties. See DeNovellis v. Shalala, 124 F.3d 298, 302 (1st Cir. 1997). The facts are derived from Wells Fargo's Statement of Undisputed Facts in Support of Motion for Summary Judgment (Docket No. 80) ("Def. SOF"); Plaintiffs' Response (Docket No. 88) ("Pl. Resp."); and Wells Fargo's Reply to Plaintiffs' Additional Statement of Material Facts (Docket No. 91) ("Def. Rep.").

[5] Def. SOF ¶ 3; Pl. Resp. ¶ 3.

[6] Def. SOF ¶ 4; Pl. Resp. ¶ 4.

(the "Putnam Avenue Property") for $270,000.[7]  At all relevant times, the Cremaldis were generating approximately $13,000 per month from their rental units.[8]

Cosmo Cremaldi entered into a loan with Wachovia Mortgage, FSB, a Federal Savings Bank, its successors and/or assignees, for the principal amount of $640,000 (the "Loan") by signing a Fixed Rate Mortgage Note dated January 25, 2008.[9] The Loan was secured by a Mortgage on the William Street Property, that was also dated January 25, 2008 (the "Mortgage").[10]

On November 1, 2009, Wachovia Mortgage, FSB changed its name to Wells Fargo Bank Southwest, N.A. and merged into Wells Fargo Bank, N.A.[11]

2.     The Cremaldis' Attempts To Modify The Loan

In 2010, the Cremaldis started having financial problems and trouble making their monthly mortgage payments.[12]  Around September 2010, the Cremaldis began contacting Wells Fargo to request assistance in staying current on their Mortgage.[13]  In September 2010, a

---

[7] Def. SOF ¶ 5; Pl. Resp. ¶ 5.

[8] Def. SOF ¶ 6; Pl. Resp. ¶ 6.

[9] Def. SOF ¶ 7; Pl. Resp. ¶ 7.

[10] Def. SOF ¶ 8; Pl. Resp. ¶ 8.

[11] Def. SOF ¶ 9; Pl. Resp. ¶ 9.

[12] Def. SOF ¶ 10; Def. Rep. ¶ 10.  The Cremaldis denied this statement, taking the position that while they were having difficulties paying the mortgage, they were not having financial difficulties as the problem was one of cash flow rather than resources.  Pl. Resp. ¶ 10.  However, the testimony cited does reflect that the Cremaldis testified that they were having financial difficulties.

[13] Def. SOF ¶ 11; Def. Rep. ¶ 11.  While the Cremaldis correctly point out that the testimony originally cited by Wells Fargo in support of this statement does not support it; see Pl. Resp. ¶ 10, the evidence cited in Wells Fargo's reply does.  See Docket No. 91 at 4.

borrower[14] contacted Wells Fargo to set up a payment arrangement.[15]

In September and October 2010, the Cremaldis did not have enough funds available to pay their Mortgage.[16] On November 30, 2010, Ms. Cremaldi called Wells Fargo and told them that she was unable to make her Mortgage payment.[17] Wells Fargo's representative suggested that the long-term solution would be a loan modification but that the Cremaldis were not eligible for the Home Affordable Modification Program ("HAMP") because they were not behind on their Loan Payments.[18] Wells Fargo's notes on the call also state that the Cremaldis were only having trouble for December and were looking for a one-month deferment.[19] The note also states that Wells Fargo's representative "adv[ised] borrower to call back next week about a potential repayment plan reduction for borrowers. 1-800-282-3451. Stated consquences [sic]."[20]

Ms. Cremaldi testified that when the Cremaldis first started contacting Wells Fargo, they were only seeking a temporary deferment (forbearance) and were not interested in a permanent loan modification.[21] Mr. Cremaldi did not understand the difference between a temporary

---

[14] In its statement of facts, Wells Fargo refers to each of Cosmo and Catherine Cremaldi, without distinction, as "borrower." The call log notes also refer to each of the Cremaldis as "borrower."

[15] Def. SOF ¶ 12; Pl. Resp. ¶ 12.

[16] Def. SOF ¶ 13; Pl. Resp. ¶ 13.

[17] Def. SOF ¶ 14; Pl. Resp. ¶ 14; Def. Rep. ¶ 14.

[18] Def. SOF ¶ 15; Pl. Resp. ¶ 15; Def. Rep. ¶ 15. This is one of several instances where the Cremaldis deny Wells Fargo's statement of fact on the grounds that the cited evidence does not support it. The Cremaldis then quote to the cited evidence, which in fact supports Wells Fargo's statement.

[19] Pl. Resp. ¶ 15; Docket No. 80 at 66.

[20] Pl. Resp. ¶ 15.

[21] Def. SOF ¶ 18; Pl. Resp. ¶ 18.

deferment and a permanent loan modification and the first time he heard about HAMP was in 2015.[22]

The Cremaldis allege that at some point they were instructed to stop making mortgage payments so that they would qualify for a loan modification. Because this is a key allegation of their case, and the parties have different characterizations of the Cremaldis' testimony on this point, the Court quotes the relevant portions of the Cremaldis' testimony in this regard below. Mr. Cremaldi testified as follows:

> Q: I understand your claim in this lawsuit is that at some time someone from Wells Fargo instructed you to stop paying your mortgage, is that correct?
> A: That is correct.
> Q: We'll get to answers to interrogatories that you guys produced in this case, but is it true that you claim November 30[th] is the first time someone from Wells Fargo instructed you to stop paying your mortgage?
> A: Again, my memory, I know it was mentioned somewhere along the line but I couldn't give you a timeline.
> Q: Fair to say though there's nothing in this entry that mentions the bank instructing you to stop paying your mortgage.
> A: No.
>
> ***
>
> Q: So I know you say you don't remember exactly when somebody from Wells Fargo told you to stop paying your mortgage. When they did tell you, can you tell me to the best of your memory what exactly they told you in regards to stop paying your mortgage?
> A: I was told that I was up to date on my mortgage payments and that I didn't qualify because I'd have to be in default.
> Q: Did they only tell you you were not eligible because you were not in default or did they actually tell you you should stop paying your mortgage?
> A: That's correct, what you're saying.
> Q: Were you surprised to hear the bank telling you to stop paying your

---

[22] Def. SOF ¶ 20; Pl. Resp. ¶ 20. The Cremaldis deny the statement that Mr. Cremaldi first heard about HAMP in 2015 on the grounds that there is no testimony supporting this statement. Pl. Resp. ¶ 20. Contrary to the Cremaldis' statement, however, in January 2016, Mr. Cremaldi did testify that he had heard about HAMP for the first time "about a year ago," which would have been January 2015. Def. Rep. ¶ 20; Docket No. 80 at 413.

mortgage?

A: Yes.

Q: Did you ask them any questions about what the consequences would be if you stopped paying your mortgage?

A: Yes.

Q: What did they tell you?

A: That I was not to worry, that eventually it would all straighten out once the modification or whatever they were talking about was concluded.

***

Q: Generally speaking though, is it your recollection that you did make periodic payments to the bank during this time?

A: Yes.

Q: And what was the purpose of making those periodic payments if the bank had told you to stop making payments?

A: Good faith, trying to establish good faith.

Q: During this time do you recall ever telling the bank that the reason you had stopped paying was because somebody at the bank had told you to stop paying?

A: That conversation could have come up, yeah.

Deposition of Cosmo Cremaldi (Ex. C to Wells Fargo's Statement of Undisputed Facts) ("Mr. Cremaldi Depo."), pp. 19:21-20:12; 21:11-22:11; 50:5-17.

Ms. Cremaldi testified as follows:

Q: So when you called on November 30th, your testimony is that you were unable to make your mortgage payment, is that correct?

A: Uh-hum. Yes.

Q: I believe this is the phone call that you allege was when Wells Fargo first told you to stop making your mortgage payments; is that true?

A: It was after we had filed the papers for the - - what was it called again?

Q: HAMP? Modification?

A: Modification. It was after so many of them that we then said what else can we do.

Q: On November 30th, which seems pretty early in the process, is it your testimony that at that point in time the bank didn't tell you to stop making your mortgage payments, at least on this phone call on November 30?

A: What year was that?

Q: 2010.

A: I can't remember. I don't know what year it was. It was after all this started.

Q: So it was after you submitted some applications?

A: Yes.

11

Q: Do you know if as of November 30, 2010, you guys had submitted any paperwork yet?

A: I can't remember.

Q: Does this sound like this is maybe the first time you learned about a modification?

A: Yes. That's true.

Q: Do you remember who it was at Wells Fargo that told you to stop paying the mortgage?

A: There's a sheet I wrote down names. It was different people.

Q: So there was more than one person who told you that?

A: Yes.

Q: And you said it was towards the end of the process?

A: Yes.

\*\*\*

Q: If you turn a couple of pages to 664, it looks like on December 30th of 2010 there's another phone call. At the top it says "Payment question, advising not able to pay for December and January until January 30, 2011 but does not want to get reported." Do you recall having conversations about whether or not your account would be reported to credit agencies.

A: Yes.

Q: And did you understand that by failing to make payments on your mortgage that, in fact, the bank would report that to credit agencies?

A: Not according to what they said, no.

Q: What did they say in regards to that?

A: That it wouldn't be reported, that we were applying for a modification.

Q: During any of these conversations, do you recall if you explained to anybody at the bank that the reason you haven't made payments is because somebody at the bank told you to stop making payments?

A: Yes.

Q: Earlier, you testified you didn't think the bank told you to stop making payments until near the end of the process. Do you remember saying that?

A: Yes. I remember saying that.

Q: Is that accurate or not?

A: That's accurate. It could have been - - I don't know. It's hard to remember. It really is.

Mr. Frisoli:      Counsel, I think you're confusing the witness because your question is when did the bank tell her as opposed to when the bank told her husband who then told her.

Mr. Wilson:      That's not my intention at all. I don't think they're confusing. I don't think that your comments are

12

necessarily helpful here.

Q: It's a pretty straightforward question.  You, yourself, had several conversations with people at the bank?

A: Yes.

Q: So my question is at what point during this long process did somebody at the bank tell you directly to stop making the mortgage payment?

A: To me, maybe in the middle of all of this, middle to end.

Q: Do you recall any dates in which you explained - - throughout this process I'm sure you guys received a lot of phone calls and letters telling you you were behind on your payments and things like that, is that correct?

A: I never saw anything.

Q: But you had conversations with people at the bank about the status of your loan?

A: Absolutely, yes.

Q: When during those conversations did you personally tell anybody at the bank that the reason why we aren't paying our mortgage is because somebody told us not to pay it?

A: Yes.  Do I remember when?

Q: Yes.  Do you remember any specific examples?

A: Toward the middle or the end.

Deposition of Catherine Cremaldi (Ex. D to Wells Fargo's Statement of Undisputed Facts) ("Ms. Cremaldi Depo.") pp. 12:17-14:7; 19:4-21:24.

On November 30, 2010, Wells Fargo spoke with a borrower about various loan workout options.[23] The borrower informed Wells Fargo that they were not interested in a loan modification.[24]

---

[23] Def. SOF ¶ 21.  In support of this statement, Wells Fargo cites to the Affidavit of Ms. Mueggenberg.  The Cremaldis dispute this statement on the grounds that Ms. Mueggenberg is not a percipient witness of this discussion.  Pl. Resp. ¶ 21.  The Cremaldis' denial does not comply with L.R. 56.1 because they do not controvert the fact with evidence of their own.  As discussed above, the Court has recommended that the District Court deny the Cremaldis' motion to strike Ms. Mueggenberg's affidavit.  Therefore, the Court deems this fact as admitted.  The Cremaldis make the same objection to several of Wells Fargo's statements of fact.  Whenever the Cremaldis have disputed a statement of fact on these grounds only, the Court deems that fact admitted for purposes of the motion for summary judgment.

[24] Def. SOF ¶ 21; Pl. Resp. ¶ 21.

On December 8, 2010, a borrower contacted Wells Fargo to discuss payment assistance options for their scheduled December 10, 2010 loan payment.[25]  The borrower stated that they were having financial problems due to health expenses and funeral expenses related to Ms. Cremaldi's mother's death.[26]  The borrower stated that they were only interested in a short term deferral and were not willing to apply for a loan modification.[27]  Wells Fargo explained that no short term options were available.[28]  Wells Fargo explained that if the Cremaldis were eligible for HAMP they would be offered a trial period modification and that their delinquent payments would be addressed through a permanent modification.[29]  The borrower claimed that their house was worth $1.6 million and they would seek to refinance the property with another lender if they were unable to get assistance.[30]

On December 30, 2010, Ms. Cremaldi contacted Wells Fargo.  Wells Fargo's notes reflect the following:

> PAYMENT QUESTION
> ADVISING NOT ABLE TO PAY FOR DECEMBER & JANUARY
> UNTIL 1/30/11 BUT DOES NOT WANT TO GET REPORTED...
> ADVISED WILL BE IF 12/31/10 PMT IS NOT RECEIVED TODAY...
> UPSET WE CANNOT PREVENT IT . . . ASKING FOR OFFICE OF
> PRESIDENT NUMBER TO REPORT THIS . . . PROVIDED FAX # . . . .
> PAYMENT QUESTION
> ADVISED   NEEDING   FINANCIALS   TO   APPLY   FOR   A

---

[25] Def. SOF ¶ 22.

[26] Def. SOF ¶ 22.

[27] Def. SOF ¶ 22.

[28] Def. SOF ¶ 22.

[29] Def. SOF ¶ 22.

[30] Def. SOF ¶ 22; Pl. Resp. ¶ 22.

MODIFICATION . . .[31]

On January 12, 2011, a borrower contacted Wells Fargo to make sure that their payment had been received.[32] Wells Fargo informed the borrower that the payment had been applied to the December 2010 payment and that the January 2011 payment was currently due.[33] The borrower asked to place a stop payment on their scheduled autodraft payment, however due to an earlier stop payment requested by the borrower, Wells Fargo was unable to stop the payment.[34]

On February 7, 2011, a borrower contacted Wells Fargo and was interviewed for a HAMP modification.[35] The borrower provided information about income and liabilities. The borrower also stated that the reason for the default was that he had multiple surgeries and his mother in law had passed away.[36] The borrower anticipated that the hardship would end in April 2011.[37]

Wachovia Mortgage sent a letter dated February 7, 2011 to Mr. Cremaldi regarding his request for a modification.[38] Wachovia Mortgage sent a letter dated February 8, 2011 to Mr. Cremaldi enclosing a modification application, which requested that Mr. Cremaldi submit certain

---

[31] Docket No. 80 at 63.

[32] Def. SOF ¶ 24; Pl. Resp. ¶ 24.

[33] Def. SOF ¶ 24; Pl. Resp. ¶ 24.

[34] Def. SOF ¶ 24; Pl. Resp. ¶ 24.

[35] Def. SOF ¶ 25; Docket No. 80 at 61.

[36] Def. SOF ¶ 25; Pl. Resp. ¶ 25.

[37] Def. SOF ¶ 25; Docket No. 80 at 58.

[38] Def. SOF ¶ 26; Docket No. 80 at 95.

documentation with the application.[39]  On February 11, 2011, Wells Fargo contacted Mr. Cremaldi, who stated that he would provide the necessary documents by February 14, 2011, although he may not have the necessary tax returns yet.[40]

On February 15, 2011, Wells Fargo followed up with Mr. Cremaldi regarding the missing documents.[41]  Mr. Cremaldi alleged that he had faxed the documents but his taxes had not yet been filed and he would call after they had been filed.

On February 17, 2011, Wells Fargo again followed up with Mr. Cremaldi regarding the missing documents.[42]  Mr. Cremaldi stated that his attorney wanted to look over the documents before sending them in and that Mr. Cremaldi would call back on February 18, 2011.[43]

On February 21, 2011, Wells Fargo again called Mr. Cremaldi, who stated that he was declining a modification because his attorney advised him to refinance with a local bank.[44]  Wachovia Mortgage sent a letter dated February 21, 2011 to Mr. Cremaldi, which stated that his HAMP request was denied because he had either withdrawn his request or refused the offer of assistance.[45]

On March 26, 2011, Wells Fargo spoke with Ms. Cremaldi, who stated that she was

---

[39] Def. SOF ¶ 27; Docket No. 80 at 97-106.

[40] Def. SOF ¶ 28; Docket No. 80 at 108.

[41] Def. SOF ¶ 29; Pl. Resp. ¶ 29.

[42] Def. SOF ¶ 30; Docket No. 80 at 108.

[43] Def. SOF ¶ 30; Docket No. 80 at 108.

[44] Def. SOF ¶ 31; Docket No. 80 at 108.

[45] Def. SOF ¶ 32; Docket No. 80 at 111.

refusing any assistance and wanted out of the company.[46] On April 11, 2011, Wells Fargo spoke

with a borrower and informed him that he was behind on three monthly payments.[47] The

borrower stated that he was working on making the payments and Wells Fargo told him that

collection activities would continue.[48]

On July 27, 2011, Wells Fargo spoke with a borrower, who stated that she was interested

in pursuing a modification, but that she was waiting on tax documentation.[49] On September 14,

2011, a borrower contacted Wells Fargo to inquire about their loan status.[50] Wells Fargo

informed the borrower that they would need to complete a new interview and Wells Fargo did

not have an active application for modification.[51]

On September 15, 2011, Wells Fargo emailed the Cremaldis a non-borrower occupancy

and income certification form.[52] Wachovia Mortgage sent Mr. Cremaldi a letter dated

September 16, 2011 containing a modification application packet.[53] Wachovia Mortgage sent

Mr. Cremaldi a letter dated October 17, 2011, informing him that Wachovia Mortgage had not

received the necessary documents to review him for a HAMP modification.[54] The letter dated

---

[46] Def. SOF ¶ 33; Docket No. 80 at 81.

[47] Def. SOF ¶ 34; Docket No. 80 at 78.

[48] Def. SOF ¶ 34; Docket No. 80 at 78.

[49] Def. SOF ¶ 35; Docket No. 80 at 74-75.

[50] Def. SOF ¶ 36; Pl. Resp. ¶ 36.

[51] Def. SOF ¶ 36; Pl. Resp. ¶ 36.

[52] Def. SOF ¶ 37; Pl. Resp. ¶ 37.

[53] Def. SOF ¶ 38; Pl. Resp. ¶ 38.

[54] Def. SOF ¶ 39; Pl. Resp. ¶ 39.

October 17, 2011 warned that if Wachovia Mortgage did not receive the documents within 30 days of the date on the letter, the HAMP review would be closed.[55]

Wachovia Mortgage sent Mr. Cremaldi a letter dated November 18, 2011, informing him that his HAMP application was denied because he did not submit the requested documents.[56] On January 3, 2012, Wells Fargo sent the Cremaldis a letter notifying them that their Loan had been approved for commencement of foreclosure activity.[57] Wachovia Mortgage sent Mr. Cremaldi a letter dated January 12, 2012, informing him that the Loan was in default for non-payment of contractual payments.[58]

On February 24, 2012, Wells Fargo contacted a borrower regarding the delinquency of the Loan.[59] The borrower stated that they could not bring the loan current and could not commit to a promise to pay.[60] Wells Fargo advised the borrower of the "NOI" which was the notice of default and educated the borrower on modifications.[61] The borrower expressed an interest in

---

[55] Def. SOF ¶ 39; Pl. Resp. ¶ 39.

[56] Def. SOF ¶ 40; Pl. Resp. ¶ 40.

[57] Def. SOF ¶ 41. This is one of the many facts disputed on the grounds that the Court should disregard Ms. Mueggenberg's affidavit because she does not have personal knowledge of the facts averred in her affidavit. The Cremaldis argue that Ms. Mueggenberg has no personal knowledge that January 3, 2012 notice was sent or received by the Cremaldis and the record cited does not evidence mailing or receipt. Pl. Resp. ¶ 41. However, the Cremaldis produced the January 3, 2012 letter in discovery. Def. Rep. ¶ 41; see also Docket No. 80 at 211-212. Accordingly, this denial does not appear to be in good faith.

[58] Def. SOF ¶ 42; Docket No. 80 at 131-132.

[59] Def. SOF ¶ 43; Docket No. 80 at 51.

[60] Def. SOF ¶ 43; Docket No. 80 at 51.

[61] Def. SOF ¶ 43; Docket No. 80 at 51.

obtaining a modification.[62]

On March 29, 2012, the Cremaldis faxed Wells Fargo some financial documents, including bank statements, unsigned and undated tax returns, and social security benefit information.[63] Wells Fargo Home Mortgage sent Mr. Cremaldi a letter dated April 16, 2012, responding to his March 29, 2012 fax.[64] The letter explained why the previous requests to modify the Loan had been denied.[65] The letter also stated that his request for modification assistance was being forwarded to the appropriate department.[66]

On May 28, 2012, Wells Fargo spoke with a borrower, who stated that he was selling another property and that he would be able to bring the Loan current by July.[67] Wells Fargo Home Mortgage sent Mr. Cremaldi a letter dated June 19, 2012, which advised that the Loan was being reviewed for HAMP.[68] On June 27, 2012, the Cremaldis signed a hardship affidavit, which is part of the HAMP application package.[69] Among other things, the Cremaldis attested under the pains and penalties of perjury that they understood that if they had "intentionally defaulted on [their] existing mortgage . . . the Servicer, the U.S. Department of the Treasury, or

---

[62] Def. SOF ¶ 43; Docket No. 80 at 51.

[63] Def. SOF ¶ 44; Pl. Resp. ¶ 44.

[64] Def. SOF ¶ 45; Docket No. 80 at 166-167.

[65] Def. SOF ¶ 45; Docket No. 80 at 166-167.

[66] Def. SOF ¶ 45; Docket No. 80 at 166-167.

[67] Def. SOF ¶ 46; Docket No. 80 at 72.

[68] Def. SOF ¶ 47; Pl. Resp. ¶ 47.

[69] Def. SOF ¶ 48; Ex. E to Wilson Aff.; Docket No. 80 at 214-223.

their respective agents may terminate [their] participation in MHA." [70]

Wells Fargo Home Mortgage sent Mr. Cremaldi a letter dated July 5, 2012, informing him that the documents necessary to complete his HAMP review had not been received and the application would be closed if the records were not received within 15 days.[71] The letter further stated that if the requested documents were not received within 30 days, the HAMP review would be closed.[72]

On July 10, 2012, the Cremaldis sold the Putnam Avenue Property for $1,500,000 and received a cash payout of $1,351,105.49 from the transaction.[73] On July 11, 2012, a borrower contacted Wells Fargo to request a loan payoff quote.[74] On July 12, 2012, Wells Fargo closed its review of the Cremaldis' HAMP application.[75]

On August 17, 2012, the Loan was reinstated by making payments totaling $53,361.10.[76] Wells Fargo Home Mortgage sent Mr. Cremaldi a letter dated August 20, 2012 informing him that the Loan had been reinstated. The Cremaldis made timely monthly payments throughout the remaining life of the Loan.[77]

Wells Fargo sent a payoff quote dated September 15, 2014 to an attorney named Wendy

---

[70] Ex. E to Wilson Aff.; Docket No. 80 at 221.

[71] Def. SOF ¶ 49; Pl. Resp. ¶¶ 49, 89; Def. Rep. ¶ 89.

[72] Def. SOF ¶ 49; Pl. Resp. ¶ 49.

[73] Def. SOF ¶ 50; Pl. Resp. ¶ 50.

[74] Def. SOF ¶ 51; Pl. Resp. ¶ 51.

[75] Def. SOF ¶ 52; Pl. Resp. ¶¶ 52, 90; Def. Rep. ¶ 90.

[76] Def. SOF ¶ 53; Pl. Resp. ¶ 53.

[77] Def. SOF ¶ 54; Pl. Resp. ¶ 54.

Stander.[78] On September 17, 2014, the Cremaldis paid off the Loan by making payments of $658,337.33.[79]

### 3.   The Cremaldis' Emotional Distress Claims

Mr. Cremaldi's medical records reveal that he started seeing a psychologist in June 2004 and was first prescribed Zoloft in July 2004.[80] Prior to November 2010, Mr. Cremaldi struggled with depression and anxiety.[81] From October 2010 until October 2011, medical records indicate that Mr. Cremaldi's depression was in remission.[82] In October 2011, Mr. Cremaldi began having new issues with regard to his wife's "email correspondence."[83] In February 2012, Mr. Cremaldi showed again signs of depression.[84] Notes from a visit on February 6, 2012 mention the email issues.[85] The last medical record noting a psychiatrist visit is dated November 2012.[86]

Ms. Cremaldi's medical records show that she was treated by a psychiatrist for years

---

[78] Def. SOF ¶ 57; Pl. Resp. ¶ 57.

[79] Def. SOF ¶ 59; Pl. Resp. ¶ 59.

[80] Def. SOF ¶ 62. The Cremaldis dispute this fact and others related to the Cremaldis' medical records but do not cite to any evidence that would create a genuine issue of fact. Rather, they state that Attorney Wilson is not a percipient witness and does not have the credentials required to interpret the Cremaldis' medical records. Pl. Resp. ¶ 62. While the Court has found that Attorney Wilson's characterization of the Cremaldis' medical records is not evidence, in order to properly create a genuine issue of fact, the Cremaldis must cite to evidence of their own in response to Wells Fargo's statement of undisputed facts. The Cremaldis have failed to do so with respect to their own medical records.

[81] Def. SOF ¶ 63.

[82] Def. SOF ¶ 64.

[83] Def. SOF ¶ 65.

[84] Def. SOF ¶ 66.

[85] Ex. M to Wilson Aff., WF-CREMALDI-000709.

[86] Ex. M to Wilson Aff, WF-CREMALDI-000707.

prior to 2010.[87]  She had been diagnosed with major depression and generalized anxiety disorder

as far back as May 2003.[88]  In August 2011, Ms. Cremaldi's doctor noted that she and her

husband were doing well, that the strain of family issues persisted, but that they were generally

happy.[89]  In October 2011, Ms. Cremaldi's doctor noted that Ms. Cremaldi and her husband were

doing well under the ongoing stress of family issues.[90]  From February to November 2012, Ms.

Cremaldi continued to struggle with the numerous responsibilities related to her family and was

concerned about recent family issues but recognized her responsibility in recent developments.[91]

III.   ANALYSIS

   A.   Standard Of Review

   Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could

resolve the point in the favor of the non-moving party." Sanchez v. Alvarado, 101 F.3d 223, 227

(1st Cir. 1996) (quotations and citations omitted).  A material fact is one which has "the potential

to affect the outcome of the suit under the applicable law." Id. (quotations and citations

omitted).

   The moving party bears the initial burden of establishing that there is no genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If that burden is met, the

---

[87] Def. SOF ¶ 69.

[88] Ex. N to Wilson Aff., WF-CREMALDI-001353.

[89] Def. SOF ¶ 71.

[90] Def. SOF ¶ 72.

[91] Def. SOF ¶ 73.

opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. See id. at 324. "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. See O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate." Walsh v. Town of Lakeville, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

B.    The Cremaldis' Misrepresentation Claim Fails As A Matter Of Law

In their complaint, the Cremaldis allege that they relied on the representations of Wells Fargo which directed them to cease making mortgage payments in order to qualify for a loan modification. Amended Complaint ("AC") ¶ 48. They further allege that Wells Fargo knew or should have known that the Cremaldis' Loan would be placed in foreclosure as a result of the advice rendered by Wells Fargo. AC ¶ 49. Wells Fargo argues that the Cremaldis' misrepresentation claim fails as a matter of law. Docket No. 79 at 12-24. The Court agrees.

In order to state a claim for fraudulent misrepresentation, the Cremaldis must show that (1) Wells Fargo made a false representation of material fact; (2) Wells Fargo knew that the fact was false; (3) Wells Fargo intended that the Cremaldis rely on the misrepresentation; and (4) the Cremaldis reasonably relied on Wells Fargo's misrepresentation to their detriment. See Eureka Broadband Corp. v. Wentworth Leasing Corp., 400 F.3d 62, 68 (1st Cir. 2005). It is "sufficient

23

to show proof of a statement made, as of the party's own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge; actual intent to deceive on the part of the defendants need not be shown." Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 458-459 (2002).

First, Wells Fargo argues that the Cremaldis have not provided sufficient evidence to create a genuine issue of fact whether Wells Fargo instructed them to stop making mortgage payments in order to qualify for a modification. Docket No. 79 at 12-13, 15-17. Wells Fargo argues that other than the Cremaldis' self-serving and contradictory testimony, there is no evidence that anyone at Wells Fargo ever instructed them to stop making their mortgage payments. Id. Wells Fargo's notes logs show the contrary: that Wells Fargo repeatedly warned the Cremaldis of the negative consequences of their failure to make timely mortgage payments. Id.

Deposition testimony that "merely reiterate[s] allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge" is insufficient to defeat summary judgment. Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 18 (1st Cir. 2007) (citations omitted). However, a "party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." Id. (citations omitted). "Therefore, provided that the nonmovant's deposition testimony sets forth specific facts, within his personal knowledge, that, if proven, would affect the outcome of trial, the testimony must be accepted as true for purposes of summary judgment." Id. (citations omitted).

The Court finds that the Cremaldis' deposition testimony is insufficient to defeat Wells Fargo's summary judgment motion. The Cremaldis' testimony merely repeats their allegations

in the complaint and does not provide the details necessary to prove that Wells Fargo made the alleged representations. Mr. Cremaldi testified that he could not remember when the instruction to stop making payments was made.[92] Ms. Cremaldi testified that the instruction was made near the end of their communications with Wells Fargo, rather than on November 30, 2010 as alleged in the Cremaldis' answers to interrogatories.[93] Neither could identify the individual or individuals who gave the instruction nor could they offer any details regarding the conversation or conversations in which the instruction was given.[94] Although during her deposition Ms. Cremaldi stated that she may have kept notes of the alleged conversations,[95] the Cremaldis have not presented any such notes to the Court as part of the summary judgment record.

Moreover, in the Cremaldis' correspondence with Wells Fargo, they never told Wells Fargo that the reason they stopped making payments was because a Wells Fargo representative told them to do so. For example, in Ms. Cremaldi's March 25, 2014 email to Wells Fargo's CEO, which is over two pages long, she never suggests that the reason they stopped making mortgage payments was due to Wells Fargo's instructions.[96] Simply, other than their own vague and contradictory allegations, the Cremaldis have provided no evidence that they were told to

---

[92] Mr. Cremaldi Depo. at p. 20:1-8.

[93] Ms. Cremaldi Depo. at p. 12:21-13:16; 20:5-21:24.

[94] In their Chapter 93A demand letter to Wells Fargo, the Cremaldis identify David Tristan as one of the individuals making the representation. See Docket No. 1-3 at 11. However, at this stage, the Cremaldis must present evidence supporting their allegations. See Fed. R. Civ. P. 56(c)(1) (a party asserting a genuine issue of fact must cite to particular parts of materials in the record). The Cremaldis have not pointed to any deposition testimony nor have they provided affidavits or other evidence supporting this assertion.

[95] Ms. Cremaldi Depo. at p. 13:23-14:4.

[96] Docket No. 80 at 177-179.

stop making mortgage payments.[97]

In their opposition to Wells Fargo's motion for summary judgment, the Cremaldis allege, apparently for the first time, that Wells Fargo told them to apply for a loan modification numerous times, with the knowledge that their financial situation would render them ineligible for a loan modification program. Docket No. 87 at 6-7. However, the Cremaldis have not provided sufficient evidence to show that Wells Fargo knew that they were ineligible for a loan modification. Further, the Cremaldis have not alleged, let alone provided any evidence, that Wells Fargo promised them a loan modification. Nothing in the record shows that Wells Fargo suggested that the Cremaldis were guaranteed or entitled to a loan modification. Rather, the record shows only that Wells Fargo advised them that they could apply for a loan modification.[98] Moreover, the record shows that the Cremaldis never provided all of the documentation required to be considered for a loan modification.[99]

Next, Wells Fargo also argues that even if it told the Cremaldis that they would obtain a loan modification if they stopped making their mortgage payments, such a representation would not be actionable. Docket No. 79 at 16-17. False statements of "conditions to exist in the future" or "promises to perform an act" do not support a claim of misrepresentation "unless the promisor had no intention to perform the promise at the time it was made." Ruggers, Inc. v.

---

[97] The Cremaldis appear to suggest that the motion for summary judgment should be denied because Wells Fargo may have been deficient in complying with its discovery obligations which may have hindered the Cremaldis' ability to obtain evidence to support their claims. See Docket No. 87 at 2-4, 7-8. It was incumbent upon the Cremaldis to file any necessary discovery motions. The Court granted in part and denied in part the Cremaldis' two motions to compel. See Docket Nos. 72, 73.

[98] See, e.g., Def. SOF ¶¶ 15, 22, 23, 27, 25.

[99] Def. SOF ¶¶ 26-28, 29-33, 38-40, 45, 49, 52; Pl. Resp. ¶ 29.

United States, 843 F. Supp. 2d 139, 146 (D. Mass. 2012). The Cremaldis have not presented any evidence that Wells Fargo promised that they would receive a loan modification without intending to fulfill that promise.

Finally, Wells Fargo argues that the Cremaldis could not have relied justifiably on Wells Fargo's alleged instruction to cease making mortgage payments in order to qualify for a loan modification. Docket No. 79 at 17-19. After November 30, 2010, Wells Fargo sent several letters to the Cremaldis regarding their mortgage, many containing the following disclaimer: "We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report." See, e.g., Exs. H, J to Mueggenberg Aff. Other correspondence instructed the Cremaldis to continue making mortgage payments while Wells Fargo reviewed their modification applications. See, e.g., Ex. E to Mueggenberg Aff. Moreover, some of the correspondence the Cremaldis received contained the following language:

> The HAMP evaluation and the process of foreclosure may proceed at the same time. If the loan has been previously referred to foreclosure, the foreclosure process will continue while the loan is evaluated for HAMP. However, no foreclosure sale will be conducted and you will not lose your home during the HAMP evaluation. You may receive foreclosure notices or you may see steps being taken to proceed with a foreclosure sale. While you will not lose your home during the HAMP evaluation, to protect your rights under applicable foreclosure law, you may need to respond to these foreclosure notices or take other actions. If you do not understand the legal consequences of the foreclosure, you are encouraged to contact a lawyer or housing counselor for assistance.

Ex. O to Mueggenberg Aff.

It was unreasonable as a matter of law for the Cremaldis to rely on the alleged instructions of unidentified Wells Fargo employees while they were receiving communications from Wells Fargo warning them about the consequences of their failure to pay. Further, the

Cremaldis' allegations that they reasonably relied on Wells Fargo's instruction to cease making mortgage payments are contradicted by their own testimony that they made payments sporadically during the period they allegedly were being told not to pay.  Mr. Cremaldi testified that they made periodic mortgage payments during the relevant time period in order to establish "good faith."[100]

Accordingly, the Court finds that Wells Fargo is entitled to summary judgment on its favor on the Cremaldis' misrepresentation claim.

###### C.     The Cremaldis Have Failed To Raise A Triable Issue Of Fact On Their Emotional Distress Claims

The Cremaldis have alleged claims for both intentional and negligent infliction of emotional distress.  To prevail on a claim of intentional infliction of emotional distress, the Cremaldis must prove that (1) Wells Fargo either intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result from its conduct; (2) Wells Fargo's conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized society; (3) Wells Fargo's conduct caused the Cremaldis emotional distress; and (4) the emotional distress suffered by the Cremaldis was severe and of a nature that no reasonable person could be expected to endure it.  Conley v. Romeri, 60 Mass. App. Ct. 799, 803 (2004).  The Massachusetts Supreme Judicial Court has explained that

> Liability cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions or other trivialities nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

---

[100] Mr. Cremaldi Depo. p. 50:5-12.

Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (internal quotation marks and citations omitted). The test for intentional infliction of emotional distress is demanding, and requires behavior that is "extreme and outrageous . . . beyond all possible bounds of decency and . . . utterly intolerable in a civilized society." Conley, 60 Mass. App. Ct. at 803.

In order to support a claim for negligent infliction of emotional distress, Massachusetts law requires proof of (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. In re Lopez, 486 B.R. 221, 234 (Bankr. D. Mass. 2013) (citing Payton v. Abbott Labs, 386 Mass. 540 (1982)).

The Cremaldis' claims for emotional distress fail because they are based on Wells Fargo's alleged instruction to the Cremaldis to cease making mortgage payments and to apply for a loan modification. See Docket No. 87 at 14. Because, as discussed above, the Cremaldis have not presented sufficient evidence to create a genuine issue of fact on this issue, their claims for emotional distress must fail as well.

In addition, the Cremaldis have failed to show that Wells Fargo's actions caused them emotional distress at a sufficient level to state a claim. Both Mr. and Ms. Cremaldi had suffered from depression and other problems for many years prior to the events at issue in this case. Their medical records contain no reference to their interactions with Wells Fargo. The Cremaldis have not pointed to any evidence to support their claims.[101]

---

[101] In their opposition to Wells Fargo's motion for summary judgment, the Cremaldis cite to the complaint. Docket No. 87 at 15. Again, at this stage, the Cremaldis must point to evidence of record in order to support their claims.

Accordingly, the Court finds that the Cremaldis have failed to raise a triable issue of fact with respect to their emotional distress claims.

> D.     Wells Fargo Is Entitled To Summary Judgment
>         On Plaintiffs' Chapter 93A Claims

Plaintiffs also bring a claim under Chapter 93A of the Massachusetts General Laws. Mass. Gen. Laws Chapter 93A declares unlawful unfair methods of competition and unfair and deceptive acts or practices in the conduct of any trade or commerce. Mass. Gen. Laws c. 93A § 2. Section 9 provides for a private right of action for consumers. Mass. Gen. Laws c. 93A §§ 9. Chapter 93A liability exists if the defendant's conduct falls "within at least the penumbra of some common-law, statutory, or other established concept of unfairness" or is "immoral, unethical, oppressive or unscrupulous." Cambridge Plating Co. v. Napco, Inc., 85 F.3d 752, 769 (1st Cir. 1996) (internal quotations omitted).

Chapter 93A does not require the violation of a statute to create liability. Charest v. Federal Nat. Mortg. Ass'n, 9 F. Supp. 3d 114, 124 (D. Mass. 2014) (citations omitted). Similarly, an action under Chapter 93A need not articulate every element of a common law tort claim to survive. Cummings v. HPG Int'l, Inc., 244 F.3d 16, 25 (1st Cir. 2001) (citing Massachusetts Farm Bureau Fed'n, Inc. v. Blue Cross, Inc., 403 Mass. 722 (1989)). "Conversely, violation of a statute does not automatically give rise to a Chapter 93A claim." Charest, 9 F. Supp. 3d at 125 (citing Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 259 (D. Mass. 2011)).

In the loan modification context, violations of the Home Affordable Modification Program ("HAMP") have sometimes given rise to Chapter 93A claims. Merely alleging a violation of HAMP, however, is not sufficient to state a claim under Chapter 93A. Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 186 (D. Mass. 2011); see also Charest, 9 F.

Supp. 3d at 125 ("[N]ot every technical violation of HAMP should expose a servicer to Chapter

93A liability."). In order to state a Chapter 93A claim based on HAMP violations, the plaintiff

must also allege that the violation is unfair or deceptive and that recovery is compatible with the

objectives of enforcement mechanisms contained in the underlying statute. Markle, 844 F. Supp.

2d at 186. Thus, "[t]he limited number of Chapter 93A claims that have survived motions to

dismiss 'have alleged a pattern of misrepresentations, failure to correct detrimental errors, and/or

dilatory conduct on the part of the servicer and/or bank that the courts could have found amount

to unfair or deceptive practices,' or have involved a "servicer's alleged representation that

compliance with the [Trial Period Plan] would lead to permanent modification, which thereby

induced the homeowners to continue payments when the servicer never intended to modify the

loan.'" Newell v. America's Servicing Co., No. 13-11141-RGS, 2013 WL 4805060, at *3 (D.

Mass. Sept. 9, 2013) (citations omitted).

      The Cremaldis allege that Wells Fargo urged them to stop making mortgage payments in

order to seek a loan modification without telling them of the risks involved, forced them to wait

months while late fees, interest, and penalties accrued, repeatedly required the plaintiffs to

submit the same documents, and refused to provide the plaintiffs with information regarding the

status of their mortgage. Ultimately, Wells Fargo placed the Cremaldis' loan in foreclosure and

forced the plaintiffs to pay late fees and penalties to reinstate the mortgage. As observed by the

District Court in its order on Wells Fargo's motion to dismiss, if proven, such conduct could

constitute unfair business conduct in violation of Chapter 93A. Docket No. 16 at 15-16.

      The Cremaldis, however, have failed to point to any evidence supporting their claims. As

discussed above, there is insufficient evidence to support a claim that Wells Fargo told the

Cremaldis to stop paying their mortgage. Indeed, there is much evidence that Wells Fargo

informed them that if they stopped paying their mortgage they risked foreclosure. The record also does not support their allegation that Wells Fargo forced the Cremaldis to wait months and repeatedly asked them to submit the same documents.

Indeed, the record shows that the Cremaldis applied for a loan modification in February 2011 but did not timely submit all required documentation.[102] On February 21, 2011, Wells Fargo contacted Mr. Cremaldi, and its notes reflect that he stated that he was declining a modification because his attorney advised him to refinance with a local bank.[103] In March 2011, Wells Fargo's notes reflect that Ms. Cremaldi stated that she was refusing any assistance and wanted out of the company.[104] The Cremaldis again expressed interest in applying for a modification in September 2011.[105] Once again, however, the Cremaldis failed to submit the required documentation in a timely manner.[106] This process was repeated in the period from March through July 2012.[107] In August 2012, the Loan was reinstated and ultimately paid off in September 2014.[108] The Cremaldis have not provided any evidence to dispute these facts. Accordingly, the Cremaldis have failed to raise a triable issue of fact with respect to their Chapter 93A claim as well.

---

[102] Def. SOF ¶¶ 25-30.

[103] Def. SOF ¶¶ 31-32.

[104] Def. SOF ¶ 33.

[105] Def. SOF ¶¶ 36-37.

[106] Def. SOF ¶¶ 39-40.

[107] Def. SOF ¶¶ 44-49; Pl. Resp. ¶¶ 44, 47, 49.

[108] Def. SOF ¶¶ 53, 59; Pl. Resp. ¶¶ 53, 59.

E.    Preemption

Because the Court has found that the Cremaldis have failed to raise triable issues of fact

as to any of their claims, it is not necessary to address Wells Fargo's preemption arguments. See

Docket No. 79 at 25-27. The Court notes, however, that the District Court had previously

rejected those arguments in connection with Wells Fargo's motion to dismiss. Docket No. 16 at

34-35. Wells Fargo simply repeats the same arguments that the District Court already rejected.

Wells Fargo has not pointed to any new evidence in the summary judgment record that would

justify any recommendation with respect to the District Court's prior ruling.

F.    Damages

Finally, Wells Fargo argues that even if the Cremaldis were able to establish liability on

their claims, Wells Fargo is entitled to summary judgment because the Cremaldis will be unable

to prove their damages without expert testimony. Docket No. 79 at 27-29. Wells Fargo focuses

on the Cremaldis' allegation that they have suffered damages in the amount of $200,000 due to

impaired credit and $150,000 in additional interest expenses due to being unable to refinance

another mortgage. Id. at 27. However, those are not the only categories of damages that the

Cremaldis seek. They also seek damages for the additional interest and penalties they allegedly

incurred in bringing the Loan current. Those amounts should be relatively easy to calculate

based on Wells Fargo's records.[109] Whether the Cremaldis should or should not be allowed to

present evidence regarding other categories of damages is more properly the subject of a motion

in limine if the District Court disagrees with this Court's recommendation that it grant summary

judgment in favor of Wells Fargo on all of the plaintiffs' claims.

---

[109] Although the Court has recommended that the District Court grant Wells Fargo's motion to
strike Exhibit 4, the Cremaldis should be able to prove the amount of interest and penalties paid
based on Wells Fargo's business records produced in discovery.

IV.    RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case grant in part and deny in part the Cremaldis' motion to strike, grant Wells Fargo's motion to strike, and grant Wells Fargo's motion for summary judgment.

V.    REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE

34